# In the United States Court of Federal Claims

No. 10-92
Filed: June 30, 2011
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| M.E.S., INC., | Ancillary Jurisdiction; |
| Plaintiff, | Equitable Relief, 28 U.S.C. § 1491(a)(2); |
| | Intervention of Right, RCFC 24(a)(2); |
| v. | Miller Act, 40 U.S.C. § 3131; |
| | Preliminary Injunction and Temporary Restraining Order, RCFC 65. |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Michael H. Payne**, Cohen Seglias Pallas Greenhall & Furman PC, Philadelphia, Pennsylvania, Counsel for Plaintiff and Intervenor.

**David Frank D'Alessandris**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**MEMORANDUM OPINION AND ORDER**

**BRADEN,** *Judge*.

**I.     RELEVANT FACTS AND PROCEDURAL HISTORY.[1]**

On July 20, 1998, the United States Postal Service ("USPS") issued a solicitation for the construction of a new post office in Riverhead, New York (the "Riverhead P.O. Project"). USPS Compl. ¶ 9. On August 11, 1998, pursuant to the terms of the solicitation for the Riverhead P.O. Project and the Miller Act,[2] M.E.S., Inc. ("MES") acquired Performance Bond No. 73 SB 103097863 BCM (the "Performance Bond") from Travelers Casualty & Surety Company of

---

[1] The relevant facts were derived from: the February 16, 2010 Complaint ("Compl.") that initiated this action, and a March 1, 2010 Complaint filed by the United States Postal Service in the United States District Court for the Eastern District of New York, attached as an exhibit to MES's February 21, 2011 Motion For Preliminary Injunction And Temporary Restraining Order ("USPS Compl."). *See United States Postal Service* v. *Travelers Casualty & Surety Company of America*, No. 10-00892 (E.D.N.Y. filed Mar. 1, 2010).

[2] The Miller Act requires certain federal government contractors to obtain a performance bond and a payment bond before being awarded a contract. *See* 40 U.S.C. § 3131.

America ("Travelers").  USPS Compl ¶ 14.  The Performance Bond required Travelers "to be 'firmly bound' to [the USPS] for any 'penal sum' (not to exceed the value of the Performance Bond: $3,954,000) to be paid to [the USPS] in the event of a [MES] default."  USPS Compl. ¶ 17.  On September 9, 1998, the USPS awarded Contract No. 332495-98-B-0307 to MES for the performance of the Riverhead P.O. Project for $3,954,000 (the "Contract").  Compl. ¶ 4.  On October 6, 1998, the USPS issued a Notice to Proceed to MES.  Compl. ¶ 5.

On June 2, 1999, the USPS terminated the Contract for default, because MES allegedly failed to adhere to the schedule set forth therein.  USPS Compl. ¶ 19.  In July 1999, the USPS asked Travelers to complete the Riverhead P.O. Project, as required by the Performance Bond.  Compl. ¶ 7.  On August 16, 1999, MES appealed the termination for default to the USPS Board of Contract Appeals ("USPS BCA").  Compl. ¶ 8.  On October 12, 1999, the USPS Contracting Officer ("CO") informed Travelers and MES that USPS would have to reprocure the Riverhead P.O. Project to complete it in a timely manner.  Compl. ¶ 9.  On November 10, 1999, Travelers informed the USPS that it would not take over the Riverhead P.O. Project while MES's USPS BCA appeal was pending.  USPS Compl. ¶ 25.

On November 6, 2001, MES submitted a certified claim to the CO "requesting compensation for change order work, differing site conditions, delay, additional office and site work, and payment of damages for defective specifications and actions by the USPS."  Compl. ¶ 10.  On November 26, 2001, the CO deferred consideration of MES's certified claim until the USPS BCA ruled on MES's pending appeal.  Compl. ¶¶ 12-13.

On July 7, 2003, the USPS notified Travelers that it intended to reprocure the Riverhead P.O. Project, and would seek reimbursement from Travelers under the Performance Bond for any costs incurred that exceeded the Contract price.  USPS Compl. ¶ 27.  On August 25, 2003, Travelers responded that it would not consider any claim under the Performance Bond unless the USPS BCA determined that MES's termination for default was lawful.  USPS Compl. ¶ 28.

On April 26, 2004, the USPS issued a second solicitation for the Riverhead P.O. Project.  USPS Compl. ¶ 29.  On July 25, 2004, USPS awarded a contract to THC Realty Development ("THC") for $4,914,000.  USPS Compl. ¶ 31.

On January 31, 2006, the USPS BCA denied MES's August 16, 1999 appeal.  *See M.E.S., Inc.*, PSBCA No. 4462, 06-1 BCA ¶ 33,184.  The board found that, although MES was entitled to sixty days of delay, the June 6, 1999 termination for default was reasonable because MES still would have been more than a month behind schedule in completing the Riverhead P.O. Project.  *Id*.

On June 24, 2006, THC substantially completed the Riverhead P.O. Project.  USPS Compl. ¶ 34.  On September 27, 2006, USPS made a final payment to THC.  USPS Compl. ¶ 36.

On November 1, 2006, the USPS BCA denied MES's request for reconsideration of its January 31, 2006 decision.  *See In re M.E.S., Inc.*, PSBCA No. 4462, 06-2 BCA ¶ 33,430.  On September 7, 2007, the United States Court of Appeals for the Federal Circuit affirmed the USPS

BCA's January 31, 2006 decision in a nonprecedential *per curiam* opinion.  *See M.E.S., Inc.* v. *Potter*, 240 Fed. Appx. 871 (Fed. Cir. 2007).

On February 19, 2009, the CO issued a Final Decision regarding MES's November 6, 2001 certified claim, finding that the USPS was entitled to excess reprocurement costs in the amount of $803,909.  Compl. ¶ 22.

On February 16, 2010, MES filed a Complaint in the United States Court of Federal Claims, challenging the CO's February 19, 2009 Final Decision and seeking damages incurred in performing the Riverhead P.O. Project, *i.e.*, the "additional costs for change order work, differing site conditions, delay, additional office and site work, equipment and materials, and other damages due to defective specifications and actions of the USPS."  Compl. ¶¶ 23-33.

On March 1, 2010, the USPS filed a Complaint in the United States District Court for the Eastern District of New York, alleging that Travelers breached its obligations under the Performance Bond and seeking to recover its excess reprocurement costs.  USPS Compl. ¶¶ 43-49.

On May 19, 2010, the Government filed an Answer and Counterclaim in the United States Court of Federal Claims to recover $803,909 in excess reprocurement costs.

On February 21, 2011, MES filed a Motion For Preliminary Injunction And Temporary Restraining Order, requesting that the court enjoin the United States District Court for the Eastern District of New York from proceeding in *United States Postal Service* v. *Travelers Casualty & Surety Company of America*, No. 10-00892 ("Pl. Mot.").  On that same date, Travelers filed a Motion For Leave To Intervene ("Travelers Mot."), and a Motion For Preliminary Injunction and Temporary Restraining Order almost identical to that filed by MES.

On March 10, 2011, the Government filed a Response to MES's February 21, 2011 Motion For Preliminary Injunction And Temporary Restraining Order ("Gov't Pl. Resp."), and a Response to Travelers Motion To Intervene ("Gov't Int. Resp.").  On March 21, 2011, MES filed a Reply ("Pl. Reply").  On that same date, Travelers also filed a Reply ("Travelers Reply").

## II. DISCUSSION.

### A. Travelers Casualty & Surety Company of America's February 21, 2001 Motion To Intervene As A Matter Of Right.

#### 1. The Parties' Arguments.

##### a. Travelers Casualty & Surety Company of America's Argument.

Travelers requests to intervene in this case as a matter of right, pursuant to Rule 24(a)(2)[3] of the United States Court of Federal Claims ("RCFC"). Travelers Mot. at 3. In *Belton Industries, Inc.* v. *United States*, 6 F.3d 756 (Fed. Cir. 1993), our appellate court held that a motion to intervene is considered timely upon consideration of the following factors:

1) the length of time during which the would-be intervenors actually knew or reasonably should have known of their rights;
2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenors by denying intervention;
3) existence of unusual circumstances militating either for or against a determination that the application is timely.

*Id*. at 762.

First, as to the length of the time during which an intervenor knew of its rights, the United States Court of Federal Claims has held that a would-be intervenor's delay of more than a year from the commencement of an action did not prejudice the existing parties where there were few substantive developments and the defendant was aware of the intervening party's interest. *See American Renovation and Constr. Co.* v. *United States*, 65 Fed. Cl. 254, 258-59 (2005). Although it has been a year since the commencement of this action, there have been no substantial developments other than an initial disclosure and exchange of documents. Travelers Mot. at 8.

Second, USPS certainly had direct dealings with Travelers since at least July 1999 in seeking to enforce the Performance Bond. Travelers Mot. at 8. Therefore, USPS has been aware of Travelers' interest in this action since that time. *Id*. Accordingly, USPS cannot establish prejudice from Travelers intervening in this case. *Id.* Further, any alleged prejudice to USPS would be significantly outweighed by the potential prejudice to Travelers if it was not allowed to intervene. *Id*. Therefore, construing all factors regarding timeliness "in favor of the applicant for intervention," Travelers' motion is timely. *Westlands Water Dist.* v. *United States*, 700 F.2d 561, 563 (9th Cir. 1983).

---

[3] This rule provides that, on timely motion, a party is allowed to intervene as a matter of right when it: 1) claims an interest in the subject matter of the action; 2) is so situated that disposing of the action may, as a practical matter, impair or impede the party's ability to protect that interest; and 3) the existing parties cannot adequately protect the interest of the party seeking to intervene. *See* RCFC 24(a)(2).

As to the remaining requirements of RCFC 24(a), Travelers argues that it has a protectable property interest in this case by virtue of the Performance Bond, so that the resolution of MES's claims against the USPS will directly affect the extent of Travelers' liability under the Performance Bond. Travelers Mot. at 5-6. Moreover, Travelers' interests are not adequately protected by MES, because MES's "ultimate objective" is to obtain a judgment on its certified claim for additional costs against the USPS. *Id*. In contrast, Travelers seeks only to limit its liability under the Performance Bond. *See American Renovation*, 65 Fed. Cl. at 264 (holding that the minimal burden of establishing inadequate representation of a would-be intervenor's interests by parties already in the suit is satisfied by establishing that no party shares the would-be intervenor's "ultimate objective").[4] Accordingly, Travelers should be allowed to intervene in this action as a matter of right. Travelers Mot. at 1.

### b. The Government's Response.

The Government responds that Travelers has failed to comply with RCFC 24(c), because a motion to intervene must be "accompanied by a pleading that sets out the claim or defense for which intervention is sought." RCFC 24(c). As a result, the Government is unable to respond to the merits of Travelers' claims, and requests that the court require Travelers to file a Complaint In Intervention, so that the Government may have an opportunity to respond. Gov't Int. Resp. at 1- 2.

Next, the Government argues that, because the court does not have jurisdiction over Travelers' claims, Travelers has no legally protectable interest in this action. Gov't Int. Resp. at 1. The United States Court of Federal Claims does not have supplemental jurisdiction under 28 U.S.C. § 1367. *Id*. at 4. Therefore, the court must have an independent basis for jurisdiction over the claims of a would-be intervenor. *Id*.

The United States Court of Appeals for the Federal Circuit has held that under the Contract Disputes Act,[5] "[t]he government consents to be sued only by those with whom it has privity of contract." *Erikson Air Crane Co., Inc.* v. *United States*, 731 F.2d 810, 813 (Fed. Cir. 1984); *see also Preferred Nat'l Ins. Co.* v. *United States*, 54 Fed. Cl. 600, 603 (2002) (holding that although "suretyship is necessarily a three-party relationship, there is no privity of contract between the United States and the surety to a government contract.") (internal citation omitted). Therefore, a surety generally cannot bring a claim in the United States Court of Federal Claims. *See Preferred Nat'l Ins.*, 54 Fed. Cl. at 603. In *Preferred National Insurance*, the court observed that, "[o]nly two means have been identified through which . . . a surety can bring itself within the ambit of the Tucker Act. First, a surety may assert contract rights of its own arising out of a separate agreement to take over for a defaulting contractor. Second, a surety may establish a right of equitable subrogation to one of the parties to the bonded contract." *Id*. (internal citations omitted). In this case, Travelers did not take over MES's work when MES defaulted on the

---

[4] Although MES's counsel has filed a Notice Of Appearance on behalf of Travelers, the court will conduct a further inquiry as to whether such representation creates at least the appearance of a conflict, if not one in fact.

[5] The Contract Disputes Act is codified at 41 U.S.C. §§ 7101-09.

Contract. Gov't Int. Resp. at 3. Nor did Travelers pay MES or its subcontractors under the Performance Bond to establish a right to equitable subrogation. *Id*. Therefore, the Government concludes that Travelers' claims are not within the ambit of the Tucker Act. *Id*.

Finally, the United States Court of Appeals for the Federal Circuit has held that a would-be intervenor's "interest relating to the property or transaction which is the subject of the action" must be a "legally protectable interest." *American Maritime Trans., Inc.* v. *United States*, 870 F.2d 1559, 1561-62 (Fed. Cir. 1989). Because this court does not have jurisdiction to entertain Travelers' claims, Travelers' interest in this action is not "legally protectable" for the purpose of supporting a motion to intervene. Gov't Int. Resp. at 3.

### c. Travelers Casualty & Surety Company of America's Reply.

Travelers replies that it has "set forth the basis for intervention and the claims and defenses upon which intervention is sought, thus providing [the Government with] notice of the same and precluding any argument of prejudice." Travelers Reply at 4. Therefore, Travelers Motion To Intervene should not be denied based on its failure to comply with RCFC 24(c). *Id.*

In addition, Travelers argues that a party seeking intervention as of right need not establish an independent jurisdictional basis for its claim. *See Spring Constr. Co., Inc.* v. *Harris*, 614 F.2d 374, 377 (4th Cir. 1980) (recognizing that an independent jurisdictional basis is required only where a party seeks permissive intervention). In this case, Travelers' indemnity agreement with MES is a sufficient legally protectable interest to justify intervention. *See Sierra Club* v. *Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (holding that a contract interest represents a direct, legally protectable property interest); *see also Meeropol* v. *Nizer*, 505 F.2d 232, 235 (2d Cir. 1974) (holding that parties to an indemnity agreement had an interest in actions to which they were not a party that invoked claims subject to that agreement).

### 2. The Court's Resolution.

Travelers filed a Motion To Intervene just over a year after this suit was initiated. In light of Travelers' interactions with the USPS regarding the Performance Bond, and the Complaint the USPS filed in the United States District Court for the Eastern District of New York two weeks after this suit was initiated, Travelers knew, or should have known, of its right to intervene from the outset of this case. Nevertheless, the court has determined that Travelers' Motion To Intervene is timely, because any prejudice to the Government is outweighed by the potential prejudice to Travelers if it were not allowed to intervene, particularly since there have been few substantive developments in this case to date. *See Belton Industries*, 6 F.3d at 762.

In addition, the court has determined that, because of Travelers' potential obligation under the Performance Bond, Travelers has "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." RCFC 24(a)(2). Accordingly, the court has determined that MES cannot adequately represent Travelers' interest in this case, because Travelers would potentially be obligated to pay the excess reprocurement costs sought in the Government's counterclaim.

As to the jurisdictional issues raised by the Government, the United States Court of Appeals for the Federal Circuit has not directly addressed whether this court must have independent jurisdiction over the claims of a would be intervenor under RCFC 24(a)(2). *See United Keetoowah Band of Cherokee Indians* v. *United States*, 78 Fed. Cl. 303, 306 n.3 (2007) (noting that, regarding ancillary jurisdiction for claims under RCFC 24(a)(2), "[t]he [United States Court of Appeals for the] Federal Circuit has not specifically addressed this issue"). The United States Court of Appeals for the Federal Circuit, however, has held that RCFC 24 should "be construed in favor of intervention." *American Maritime*, 870 F.2d at 1561. In addition, this court has found that "the concern . . . that this court does not have independent jurisdiction over the intervenor . . . likely would be true of every putative intervening defendant, wiping out the most common form of intervention here." *Klamath Irrigation Dist.* v. *United States*, 64 Fed. Cl. 328, 334 (2005). This court historically has resolved this issue through the use of ancillary jurisdiction.[6] *See id.* ("[I]t is well-accepted that defendants intervening as a matter of right need not have independent jurisdictional grounds, but instead are covered by the doctrine of ancillary jurisdiction."). The doctrine of ancillary jurisdiction, "which rests on considerations of judicial economy and fairness, and is especially tailored for courts of limited jurisdiction, is as applicable [in the United States Court of Federal Claims] as in any Federal court, all of which, of course, are of limited jurisdiction." *Id.* (citations omitted).

Therefore, for the reasons stated herein, the court has determined that Travelers may intervene in this case as a matter of right, pursuant to RCFC 24(a)(2).[7]

---

[6] The Government argues that 28 U.S.C. § 1367, which grants supplemental jurisdiction to the United States District Courts, has pre-empted the federal common law doctrine of ancillary jurisdiction for all federal courts. Gov't. Mot. at 4. Section 1367, however, does not address the jurisdiction of the United States Court of Federal Claims. *See* 28 U.S.C. § 1367(b). As a result, the court has utilized ancillary jurisdiction to address this issue. *See, e.g.*, *American Renovation and Constr. Co.*, 65 Fed. Cl. at 262 ("[I]n this case the Court will exercise ancillary jurisdiction to determine the rights of Intervenor-Applicant and Plaintiff[.]"); *United Keetoowah Band*, 78 Fed. Cl. at 306 n.2 ("[W]hile independent subject matter jurisdiction is required for permissive intervention, it is not required for intervention of right[.]").

[7] Travelers' Motion For Leave To Intervene was not accompanied by a "pleading that sets out the claim or defense for which intervention is sought," pursuant to RCFC 24(c). In light of the guidance from the United States Court of Appeals for the Federal Circuit to construe RCFC 24 in favor of intervention and the fact that Travelers' Motion For Leave To Intervene has provided the Government with sufficient information regarding its potential claims and defenses, the court will allow Travelers to intervene despite this procedural defect. *See Spring Const. Co.*, 614 F.2d at 376-77 (4th Cir. 1980) ("Although some cases have held that intervention should be denied when the moving party fails to comply strictly with the requirements of Rule 24(c), the proper approach is to disregard non-prejudicial technical defects. The petition and accompanying affidavit filed by [intervenor] set forth sufficient facts and allegations to apprise [plaintiff] of [intervenor]'s claims. Moreover, [intervenor]'s failure to file an accompanying pleading was rectified when it filed its amended complaint shortly thereafter, and it does not appear that [plaintiff] was prejudiced by such failure.") (internal citations omitted). To remedy this procedural defect, Travelers is directed to file a pleading complying with RCFC 24(c) within

**B.    M.E.S., Inc.'s Motion For A Temporary Restraining Order And Preliminary Injunction.** [8]

    **1.    The Parties' Arguments.**

        **a.    M.E.S., Inc.'s Argument.**

Pursuant to RCFC 65, MES moves for a preliminary injunction and temporary restraining order to enjoin the United States District Court for the Eastern District of New York from proceeding with *United States Postal Service* v. *Travelers Casualty & Surety Company of America*, No. 10-cv-00892 (E.D.N.Y. filed on Mar. 1, 2010).  Pl. Mot. at 1.  On February 12, 2010, MES filed a Complaint in the United States Court of Federal Claims.  Pl. Mot at 3.  On March 1, 2010, the Government filed a Complaint against Travelers.  Pl. Mot. at 4.

The United States Court of Appeals for the Federal Circuit has held that injunction of subsequent litigation is appropriate where "the issues and parties are such that the disposition of one case would be dispositive of the other."  *Katz* v. *Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990).  The claims at issue in each of these two actions are essentially the same.  Pl. Mot. at 10.  On March 1, 2010, the USPS filed a claim in the United States District Court for the Eastern District of New York, alleging that Travelers is liable for the excess reprocurement costs incurred by USPS as a result of MES's default on the Contract, pursuant to the terms and conditions of the Performance Bond.  Pl. Mot. at 2, 10.  In that action, Travelers has asserted affirmative defenses that mirror the claims asserted by MES in the February 16, 2010 Complaint.  Pl. Mot. at 10.  On May 19, 2010, the Government filed a counterclaim in the United States Court of Federal Claims, alleging that MES owes money to the USPS as a result of its default on the Contract.  Pl. Mot. at 2, 10.  Therefore, adjudication of either of these actions necessarily will determine the other, or risk inconsistent judgments.  Pl. Mot. at 10.

Congress authorized the United States Court of Federal Claims, under the Tucker Act and the Contract Disputes Act, with exclusive jurisdiction to adjudicate MES's claims arising under the Contract.  Therefore, MES reasons that the action in the United States District Court for the Eastern District of New York, if allowed to proceed, could effectively usurp the United States Court of Federal Claims' jurisdiction over MES's claims.  Pl. Mot at 10.  Accordingly, "[i]n view of the potential applicability of the doctrines of collateral estoppel and *res judicata*," the court should enjoin the United States District Court for the Eastern District of New York from proceeding until MES's suit in this court is concluded.  *Davis* v. *United States*, 30 Fed. Cl. 201, 206 (1993); *see also id.* (determining that when two cases proceed in different fora under the

---

14 days of the issuance of this Memorandum Opinion and Order.  Pursuant to RCFC 12(a)(1)(C), the Government will respond to Travelers' pleading within 21 days of service.

[8] Travelers' Motion For Preliminary Injunction And Temporary Restraining Order is nearly identical to MES's Motion For Preliminary Injunction And Temporary Restraining Order, and both motions present the same legal arguments.  Therefore, because any discussion of Travelers' motion would be duplicative, the court will only address the arguments presented in MES's motion.

same operative facts, "the decision in the first litigation often diminishes the number of issues that otherwise would have to be addressed in the second litigation").

        **b.**        **The Government's Response.**

The Government responds that the United States Court of Federal Claims has limited jurisdiction. *See Dynalectron Corp.* v. *United States*, 4 Cl. Ct. 424, 428 (Cl. Ct. 1984) ("Like its predecessor, the United States Court of Claims, this court's jurisdiction is limited. Its authority to grant relief is dependent on congressional assent to entertain a claim against the United States."). The court's jurisdiction is dependent on the extent to which the United States has waived sovereign immunity in the Tucker Act. *See United States* v. *Testan*, 424 U.S. 392, 399 (1976) ("[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (quotation marks and citation omitted). The Tucker Act specifically restricts the court's ability to issue injunctions to the context of bid protests. *See* 28 U.S.C. § 1491(b)(2) ("To afford relief in [bid protests], the courts may award any relief that the court considers proper, including declaratory and injunctive relief[,] except that any monetary relief shall be limited to bid preparation and proposal costs."). RCFC 65 provides for the entry of injunctions for this purpose, but does not expand the jurisdiction of this court. Gov't PI Resp. at 3.

        **c.**        **M.E.S., Inc.'s Reply.**

The notion that the court has no equity powers outside of the bid protest context is an "ancient but inaccurate shibboleth." *Quinault Allottee Ass'n* v. *United States*, 453 F.2d 1272, 1274 n.1 (Ct. Cl. 1972); *see also United States* v. *Raymond*, 92 U.S. 651, 654 (1875) (recognizing this court's ability to employ equitable devices incident to its jurisdiction and that "we see no reason why [the court] may not use such machinery as courts of more general jurisdiction are accustomed to employ under similar circumstances to aid in their investigations."); *Suess* v. *United States*, 33 Fed. Cl. 89, 92-97 (1995) (holding that this court has jurisdiction over shareholder derivative suits that fall under the Tucker Act, despite their equitable nature, and that parties "can maintain at least some equitable actions before this court, so long as the relief sought is monetary"). Further, "[t]he directive that waiver of sovereign immunity not be read expansively goes to the relief [the court] can award, the subjects [the court] can consider, and the timing of claims, *not the intermediate procedural steps [the court takes] in cases plainly within [its] jurisdiction.*" *Id.* (emphasis added). Accordingly, in a case such as this, where there is an action against the United States for money damages that falls within the court's jurisdiction, the court is not precluded from "exercising equitable powers as an incident of [its] general jurisdiction." *Ambase Corp.* v. *United States*, 61 Fed. Cl. 794, 797 (2004) (quotation marks omitted).

        **2.**        **The Court's Resolution.**

Congress gave the United States Court of Federal Claims jurisdiction under the Tucker Act to grant equitable relief as "an incident of and collateral to" a money judgment. 28 U.S.C. § 1491(a)(2). The United States Court of Federal Claims, however, "has no power to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment." *James* v. *Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (quotation marks omitted). Because MES requests

an injunction that is not "incident of and collateral to" a judgment for money damages, the court does not have the authority to grant such injunctive relief.

### III.    CONCLUSION.

For the reasons stated above, MES's and Travelers' February 21, 2011 Motions For Preliminary Injunction And Temporary Restraining Order are denied. Travelers' February 21, 2011 Motion For Leave To Intervene is granted. Pursuant to RCFC 24(c), Travelers is directed to file "a pleading that sets out the claim or defense for which intervention is sought" within 14 days.

**IT IS SO ORDERED**.

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**